No. 9482.

HENRY BEER VS. THE LOUISIANA LIGHT AND HEAT PRODUCING AND MANUFACTURING COMPANY AND THE UNITED GAS PRODUCING COMPANY OF PENNSYLVANIA.

The two defendant companies entered into a contract whereby the Louisiana company transferred to the Pennsylvania company certain valuable rights and privileges in consideration of the Pennsylvania company's agreement to pay to the bond subscribers of the Louisiana company, who would transfer their subscriptions to it, a certain amount of money.

Held: That this created an obligation on the Pennsylvania company to pay the money, subject to the suspensive protestative condition of the bond subscribers' transferring their subscriptions, and no term having been fixed, the obligation was not discharged by the failure and refusal of the plaintiff, a bond subscriber, for a time, to accept the benefit of the contract. Having subsequently offered to perform the condition by transferring his subscription, the Pennsylvania company's obligation to pay became complete, it having received and enjoyed the full consideration of its contract, and plaintiff's vacillation and delay having placed it in no worse condition.

Inasmuch as plaintiff's suit is in affirmance of the contract which it was alleged the Louisiana company had no right to make, and as it is not the latter's fault that plaintiff has not long since received the stipulated consideration, plaintiff's claim against the Louisiana company has no foundation.

APPEAL from the Civil District Court for the Parish of Orleans. *Lazarus, J.*

*E. B. Kruttschnitt* for Plaintiff and Appellee.

*John M. Bonner* for the Louisiana Company, Defendant and Appellant:

1. Where two parties enter into an agreement to have certain things done for a certain price, if nothing has been done under the agreement and nothing has been paid on

account of the agreement, it is competent for these parties, by mutual consent, to cancel and annul said agreement on any terms they may deem proper.

And where said agreement is an imprudent one, it is the duty of the contracting parties to cancel and annul it and not to execute it.

2. The plaintiff was neither a stockholder nor a property holder in the Louisiana company, and theretore could not interfere in its management.

The most favorable light in which he can be considered is that of a creditor, and as a creditor he could not interfere with the management of the corporation. Morawetz on Corp. § 560.

But when the amount he paid on his subscription had been returned to him, he was not even a creditor.

Should plaintiff be considered a stockholder, he was bound by the act of the majority. R. C. C. Art. 444.

3. "It is not necessary to make a tender when it is reasonably certain that the offer will be refused." 106 U. S 202; 105 U. S. 321; 99 U. S. 186; 26 Ann. 453.

The doctrine of tender cannot be invoked when plaintiff was offered a certain price, to be paid within a certain time, for his bond subscription, and he unconditionally declined to accept the offer. R. C. C. Arts. 1801–1803; 15 Ann. 609.

4. Suppose the action taken by the defendants on the 5th of February and the 16th of April gave the plaintiff a right of action, then what was his proper remedy? He certainly cannot sue in affirmance of a *contract* that he refused to make, and cannot treat a proposition that was rejected as the equivalent of a proposition that had been accepted.

His remedy was either to have sued for damages for the violation of his agreement, or to have brought suit to recover the amount he had paid upon his subscription, as having been paid upon a consideration that had failed. 20 Central Law Journal, p. 35. and authorities there cited.

Plaintiff has not sued for damages, and he refuses to receive back the amount he paid upon his subscription.

5. Plaintiff was not injured in any manner by the resolutions of the 16th April, 1883 for his own evidence shows that the Philadelphia company had advanced the money that paid for the real estate, then standing in the name of the Louisiana company.

*Kennard, Howe & Prentiss* and *John M. Bonner* for the Pennsylvania Company, Defendant and Appellant:

1. The action is not by a stockholder, or for specific performance, or for damages, but on an alleged contract to pay a fixed sum.

2. A contract is an agreement or convention, which is, essentially, the consensus of two or more persons with respect to the same object—the being of one mind as to one thing. Dig. 2, 14, § 1; Larombière, T. 1, p. 3; C. N. 1101; C. C. 1761 Such mutual assent must co-exist at the same moment of time. Benjamin on Sales, 2d ed. p. 33. A proposition is rejected even by a modified assent, and still more by a refusal to accept, and comes to our end. Id. p. 49. Its force is exhausted. Wharton on Contracts, § 9, a.

3. The Pennsylvania company, in this case, simply made a proposition to the plaintiff to pay severally to him and the other bond subscribers, who would transfer to it their subscriptions within sixty days, a certain sum.

4. So far from accepting this proposition the plaintiff rejected it, and it was "at an end." Benjamin on Sales, pp. 33–49; Wharton on Contracts, § 9 a.

5. Where a proposition is rejected, it is at an end and its force is exhausted, and no tender by the proposer is necessary to prevent the person rejecting it from afterwards coming back and accepting it so as to make it binding. Id.

6. There was no stipulation *pour autrui* by the companies to the profit of plaintiff. Even if the Louisiana company acted in the premises as mandatory of plaintiff, yet this state

of facts does not result in a stipulation *pour autrui.* Pothier on Obl. No 74; Laurent, Vol. 15, No. 555

7.  But if a stipulation *pour autrui* was made by the companies in favor of plaintiff, it was a proposition, and when rejected by plaintiff it came to an end.  Larombière, Vol. 1, 119; Wiggin vs. Flower, 5 Rob. 413.

8.  The Pennsylvania company cannot be held herein, on any assumption of the obligations of the company, because—

*a.*  There was no debt from the Louisiana company to plaintiff to be assumed.

*b.*  Even if there were such a debt, the promise to pay it by the Pennsylvania company being a promise to pay the debt of another, must be in writing, duly signed, and no parol evidence can be received, and if received, even without objection, can have no legal effect.  Rev. Stat. of La  Sec. 1443; Merz vs. Labuzan, 23 Ann. 747; Dillon vs. Dillon, 32 Ann. 645; Laidlaw vs. Hatch, 75 Ill. 11.

The opinion of the Court was delivered by

FENNER, J.   For the proper decision of a case like this, a clear and exact statement of the pertinent facts is all-important.

The Louisiana company (above named) was a body corporate under the laws of Louisiana, organized for the purpose of manufacturing and vending gas in this State.

It had held some contract with the National Petroleum and Water Gas Company, of New York, which is not presented in this record, and is unimportant and mentioned only for the understanding of the case. We have no concern with the history or conduct of the corporation prior to November 16, 1882, on which date a contract was entered into between it and the Pennsylvania company, defendant herein, of which the following were the salient features:

1st.  The Pennsylvania company bound itself to erect gas-works in the city of New Orleans, specified and described in the contract, the work to be immediately begun and to be completed by June 1, 1883.

2d.  The Pennsylvania company conveyed to the Louisiana company licenses to the exclusive use in this city and State of certain patented processes for the manufacture of gas, including the Hanlon, Johnston, Low, Edgerton and other processes, owned or controlled, or to be owned or controlled, by said Pennsylvania company.

3d.  It transferred to the Louisiana company all the rights and privileges conferred by a certain ordinance of the city of New Orleans, No. 6824, Administration Series.

4th.  As a consideration for the foregoing, the Louisiana company agreed to pay $270,000 in money and $850,000 of its full-paid stock— $26,000 of the stock to be paid at once, and the money and the remaining stock to be paid monthly and proportionately as the work progressed.

The contract contained many other stipulations not material to our present purposes.

Of course, the execution of this contract required a provision of funds to meet its obligations, and on the following day, November 17, 1882, the directors of the Louisiana company passed a resolution for the issuance of $750,000 of bonds of the company, having forty years to run, bearing six per cent interest, payable semi-annually, and secured by mortgage "on all the property, machinery, mains, rights, privileges and franchises now owned by this company, or that may be hereafter acquired." The subscribers to these bonds were to pay ten *per cent* on December 1, 1882, and the rest in installments not exceeding fifteen. *per cent* monthly, as called for by the board when required to make payments as the work progressed.

Plaintiff, Henry Beer, subscribed to $30,000 of these bonds, and paid the ten per cent due on December 1st, and no other call thereon has ever been made.

Under the contract between the Louisiana and Pennsylvania companies, the $26,000 of stock stipulated to be paid in cash were duly delivered, but no further payment was ever made or called for, because, before much progress had been made in the work, an entire change of plan was resolved on between them. It is to be observed, however, that the Louisiana company had never made any default, and its rights under the contract subsisted unimpaired.

It appears that Edgerton, patentee of the process bearing his name, and which was the one contemplated to be used by the companies, objected to its use on the ground that under his contract with the Pennsylvania company he had stipulated that, where old companies existed, before new companies should have the benefits of its patents, he should first have the privilege of offering them to the old companies; and he claimed the exercise of that right. To settle this difficulty, Gibbs, the manager of the Pennsylvania company, came to New Orleans, and after consultation with Edgerton and the old New Orleans Gas-light Company, concluded that an arrangement might be made satisfactory to all parties concerned.

The basis of this arrangement was an agreement of the New Orleans Gas-light company to buy from the Pennsylvania company the same exclusive license to use in the city of New Orleans the processes for manufacturing gas which had already been transferred to the Louisiana company. What was the price paid by the New Orleans Gas-light Company is not revealed by the record, but it may be assumed to have been sufficient to justify the subsequent proceedings.

Of course it was essential to cancel the contract with the Louisiana company and to obtain a retrocession of these processes before they could be validly transferred to the New Orleans Gas-light Company.

To this end the Pennsylvania company, through Gibbs as its manager, entered into a contract with the Louisiana company, the exact terms of which will best appear by the following extract from the minutes of the Board of Directors of the latter company, of date February 5, 1883:

"Mr. W. W. Gibbs submitted the following proposition:

"The United Gas Improvement Company, of Philadelphia, would return to the subscribers to the bonds of this company all the instalments paid by them and twenty-five per cent on the amount of their subscriptions to the bonds of this company, payable in cash within sixty days from this date in consideration of certain changes and modifications in the contract between this company and the United Gas Improvement Company (and the transfer of said subscriptions to said company).

"On motion of W. W. Gibbs, seconded by Mr. H. O. Seixas, the following resolution accepting said proposition was adopted by a vote of eight yeas to two noes:

"In consideration of the U. S. Gas Improvement paying a sufficient sum to return to subscribers all the instalments paid by them, and the further payment by said company of twenty-five per cent cash for each of said subscribers on the amount of their subscriptions to the bonds of this company, who will transfer their subscriptions to the U. S. Gas Improvement Company:

"*Be it resolved,* That so much of the contract now existing between this company and the U. S. Gas Improvement Company as requires the erection of gas-works for this company, and so much of said contract as gives to this company the exclusive use in this city of the processes and patents mentioned therein be cancelled and annulled; and in full satisfaction of all payments to be made under said contract by this company, that the president and secretary be and are hereby authorized and empowered to issue to said U. S. Gas Improvement Company, 2340 shares of the full paid stock of this company, said stock to be in full payment and satisfaction of said above-mentioned contract and the exclusive use of the processes and patents mentioned therein in the State of Louisiana, outside of the city of New Orleans.

"On motion of Mr. Gibbs, seconded by Mr. Laplace, the following resolution was unanimously adopted:

"*Be it resolved,* That the resolution adopted by this Board on the 17th day of November, 1882, authorizing the issue of bonds to the amount of $750,000, be rescinded, cancelled and annulled."

The foregoing embodies the contract between the companies, which was never reduced to more authentic form. It has been fully executed. The Philadelphia company has received under it everything which it stipulated to receive. The former contract stands cancelled and annulled. The Philadelphia company got back the exclusive right to use the patents and processes referred to in this city and State, and, so far as the city is concerned, has sold and transferred them to the New Orleans Gas-light Company. It has paid to every bond subscriber, except Beer, the amount of cash paid on their subscriptions and the twenty-five per cent additional, and has received the transfer of their rights under said subscriptions.

Beer, at first and for a considerable time, refused to ratify or abide by the contract, but subsequently changed his mind, and on December 13, 1883, offered to surrender his subscription and demanded payment according to the contract, which was declined. He, thereafter, made a formal tender, and then brought the present suit for $10,500, being $3,000 cash paid and $7,500 as twenty-five per cent of his subscription for $30,000, asserting the solidary liability of both the defendant companies.

The gist of the defense of the Louisiana company is: that, in its contract with the Pennsylvania company, of February 5, 1883, it acted within its powers and did what it had a right to do; that plaintiff was not injured, but was benefited thereby; that if he failed to receive the benefit to which he was entitled under the contract, it was not the fault of the company, but his own in refusing to receive it when it was offered to him; and that, therefore, the company is, in no manner, liable.

Inasmuch as plaintiff sues in affirmance, and not in avoidance, of the contract, and inasmuch as the record fully establishes that plaintiff's failure to reap its benefits is due exclusively to his own fault, we consider the defense perfect, and the judgment against this company must be reversed.

The defense of the Pennsylvania company rests on the assumption that in its contract of February 5th with the Louisiana company, it merely made a *proposition* to the bond subscribers, which was not a contract and could only become so upon the acceptance thereof by said subscribers; and that when Beer, instead of accepting, rejected the proposition, the latter was at an end and all obligations arising from it were terminated.

It is impossible for us to take this view of the case. The relations of the parties and the terms of contract imperatively forbid it. The

obligation of the Pennsylvania company to pay the sum herein claimed arises, not from a mere proposition, but from its completed contract with the Louisiana company.

It is vain to say that the proposition was made to the subscribers. The record shows that it was made to the Louisiana company at a meeting of its board of directors, and was then and there accepted and ripened into a complete contract, under which the Pennsylvania company, in consideration of value received, bound itself absolutely " to pay a sufficient sum to return to subscribers all the instalments paid by them and to pay twenty-five per cent cash for each of said subscribers on the amount of their subscriptions, who will transfer their subscriptions to the U. S. Gas Improvement Company."

The only condition affixed was the transfer of the subscriptions. No term was set within which this condition was to be performed. Whether considered as a *stipulation pour autrui* or as the act of a *negotiorum gester* or unauthorized mandatary, the obligation of the Pennsylvania company, the consideration of its contract, was *to pay*, not merely to offer or *propose* to pay. The company seeks to discharge its obligation to pay by pleading a former offer to pay and refusal to receive.

Beer, offering to perform the only condition to which the company's obligation was subjected, is denied payment because he had previously refused to perform it. But the Code says: "An obligation to pay money, without any stipulation for time, may be enforced at the will of the obligee." Art. 2050. And again : "The contract of which the condition forms a part is, like all others, complete by the assent of the parties; the obligee has a right of which the obligor cannot deprive him; its exercise is only suspended, or may be defeated, according to the nature of the condition." Art. 2028. "If there be no fixed time the condition may always be performed, and it is not considered as broken until it is certain that the event will not happen." Art. 2038. "The condition being complied with, has a retrospective effect to the day that the engagement was contracted." Art. 2041.

Discarding the untenable theory that the company's dealing was a mere proposition, and holding that it incurred, under its contract, an obligation to pay money, subject to a suspensive protestative condition on the part of the obligee, without a term, which condition is accomplished by plaintiff's tender of transfer of his subscription, we consider that the foregoing textual provisions conclusively demonstrate the company's liability.

Indeed, upon principles of equity and justice, it is difficult to discover any reason why the company should escape its obligation, voluntarily

State ex rel. Guaranty and Indemnity Company vs. Jumel.

incurred, to pay to plaintiff the sum claimed. It has received and enjoyed the full consideration of its contract, the value of which has been in no manner impaired by plaintiff's vacillation and delay in availing himself of its benefits. The only effect of the delay has been to leave the money in the company's hands for a considerable period without interest.

There would seem to be an acknowledgment of plaintiff's right in the offer of the company to pay plaintiff the three thousand dollars which he had paid on his subscription, because, under the terms of its contract, if it is liable for so much, it is liable for the whole.

Under every view, the law and justice of the case are with the plaintiff. It is therefore ordered, adjudged and decreed that the judgment appealed from, in so far as it condemns the Louisiana Light and Heat Producing and Manufacturing Company, be annulled, avoided and reversed, and that in other respects it be affirmed, plaintiff and appellee to pay costs of appeal.